# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

DANIEL J. BARRY, ADMINISTRATOR, ETC. V. CHARLES E.
TYLER, ADMINISTRATOR, ETC.

November 21, 1938.

Record No. 1986.

Present, Campbell, C. J., and Holt, Gregory, Eggleston
and Spratley, JJ.

The opinion states the case.

*Charles Henry Smith,* for the plaintiff in error.

*John Barton Phillips* and *J. Randall Caton, Jr.,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Charles E. Tyler, administrator of the estate of Marian Simms, deceased, instituted this action against Julius G. Barry, to recover damages for the death of Marian Simms, caused by a collision of an automobile in which she was a passenger with an automobile truck owned by Julius G. Barry. Barry having died during the pendency of these proceedings, the action was revived in the name of his administrator.

The parties will be hereinafter referred to in the respective positions they occupied in the trial court.

There were two trials of this case in the lower court. In neither trial did the defendant put on any evidence. He relied on motions to strike the plaintiff's evidence. In both cases, the motions were overruled.

At the first trial, there was a verdict for the defendant. Upon a motion to set aside the verdict because the jury had been improperly instructed, the verdict was set aside. At the second trial, a verdict was rendered for the plaintiff in the sum of $3,000, which the trial court affirmed.

The substantial and only question raised in the argument before this court, is whether or not the trial court erred in setting aside the first verdict.

We must, under well established rules of this court, look to the record of the first trial, and if we find that the court erred in setting aside the verdict of that trial, the first verdict will be reinstated, and all proceedings subsequent thereto will be annulled. *Harris* v. *Royer*, 165 Va. 461, 182 S. E. 276. (Cases cited.)

The sole assignment of error on the first trial, is to the action of the court in setting aside the verdict of the jury. That verdict was set aside on the ground that instruction number "E," granted at the request of the defendant, was not supported by the evidence.

Instruction number "E" was given in the following language:

"The Court instructs the jury that the law requires all vehicles traveling upon the highway of this State to be equipped with and to have burning at night two driving headlights sufficient to render clearly discernible a person or object at least two hundred feet ahead; and if you believe that the driver of the car in which the plaintiff's decedent was riding was being driven at a time when the vehicle was not equipped with such lights and at a time when said lights were not burning and that such failure was the sole proximate cause of the accident, you must find for the defendant."

A number of other instructions were given, in which respective rights, duties and obligations of the parties were set out. They covered every phase of the case, including the position of the plaintiff's decedent as a guest passenger, and are not in question here.

■ The statement of the facts in the case must necessarily be gathered from the evidence of the plaintiff. There is little or no dispute as to the facts. In view of the verdict of the jury, we must regard and adopt such of it as is more favorable to the defendant as controlling.

On the night of January 26, 1936, defendant's motor truck, operated by a driver and helper, was being driven northwardly through the city of Alexandria, Virginia, on what is known as the River Road, on U. S. Route No. 1, toward Washington. At about midnight, the truck ran out of gasoline. It was stopped after being driven to the right-hand side of the road, so that the right wheels were about one foot off the concrete on the gravel shoulder. The roadway at this point is thirty feet wide, affording ample space for three lanes of traffic. It is perfectly straight, and practically level for a long distance, in both directions from the point where the truck was parked. After the truck stopped, one of the men employed thereon walked ahead to a gasoline station to get a gasoline supply, the other employee remaining with the truck, and standing nearby. The truck had been standing in this position for a few minutes when a one-seated automobile roadster, Ford model, 1931, ap-

proached from the rear and crashed into the left rear end of the truck. The Ford roadster was driven by Charles E. Tyler, and was also occupied by Tyler's wife, by Marian Simms and Eddie McCullough. The wife of Tyler was sitting next to him, McCullough next to her, and Marian Simms on the lap of McCullough. As a result of the crash, Marian Simms and McCullough were killed. The night was dark and cloudy, but it was not raining. The roadway was dry. There was no other traffic at or near the place of the collision at the immediate time of the collision, nor had there been any in either direction for some moments prior thereto.

Tyler and his wife testified that the Ford roadster was being driven between thirty and thirty-five miles per hour, on the right-hand side of the road. They stated that they were looking ahead, but that they did not see any warning lights; that "all of a sudden a big blur appeared" before them; and that they turned to the left, but were then so close that they could not avoid striking the "big blur," which turned out to be the truck of the defendant. The right-hand side of the Ford struck the left-hand side of the truck's rear end. Marian Simms was thrown out of her car, and the Ford, badly wrecked, came to a stop almost abreast of the truck. Tyler made no statement as to whether his headlights were burning, or, if so, how brightly. There was no other direct evidence, stated in so many words, as to the burning of his headlights, or their capacity for giving light.

Immediately after the crash, both Tyler and a State police officer found two red lights burning on the upper rear end of the body of the truck, one in each the right and left-hand topmost corners. These were such lights·as are required for parked or stopped cars on the highway, under Virginia Code 1936, section 2154 (145). The rear lamp required to be mounted, under Virginia Code 1936, section 2154 (141), near the license plate, was not then burning, and the condition of its wires indicated that the connection

had been broken, through rust or otherwise, sometime before the accident.

■■ The collision raised no presumption of negligence on the part of the defendant. The burden was on the plain-tiff to show not only negligence of the defendant, but that such negligence contributed to, or proximately caused, the injuries from which plaintiff's intestate died. If the defendant was not guilty of any negligence, and the sole proximate cause of the collision was the negligence of another, the plaintiff could not recover against the defendant. These were vital questions of fact, to be decided by the jury under proper instructions from the court.

It was testified, as a fact, that neither the driver of the Ford car, nor his surviving passenger, saw the parked truck until "all of a sudden a big blur appeared," and that they were then so close to the truck that they could not safely turn to the left. There is no evidence that the deceased passengers observed the truck, and certainly the presence of four persons on a single front seat lent no aid in making an urgent change in the course of the car.

■ It is admitted that immediately after the collision, the warning parked lights of the truck were burning. It is then apparent from the surrounding circumstances, that if the driver of the Ford car had been keeping a careful lookout, or if his car was being operated with the headlights required by statute, he should have seen the truck in time to have avoided the collision.

■ Not only the most elementary principle of safety, but the law itself, requires that an operator of a car should have headlights at night to show the condition of the highway before him, Virginia Code 1936, section 2154 (142). The failure either to have headlights burning, or driving lights of the capacity required by law, is sufficient to charge the operator of a car with negligence, if such failure has a causal connection with the injury complained of.

■ Tyler testifies that though he was looking, he did not see the truck. Thus the lack of visibility is offered as a fact. From that fact, natural inferences may be drawn.

A reasonable inference is that the headlights of the Ford car did not come up to the requirements of the statute.

Inferences drawn from physical facts may be as strong as direct evidence. Such inferences amount to circumstantial evidence. Facts may be proven by circumstantial evidence as well as by direct evidence. An instruction can be based on inferential or circumstantial evidence. *Norfolk & W. R. Co.* v. *Richmond Cedar Works,* 160 Va. 790, 170 S. E. 5; *C. & O. Ry. Co.* v. *Ware,* 122 Va. 246, 95 S. E. 183.

The question of the visibility of objects on the road to the driver of the Ford car was presented to the jury, both from the physical facts and from the surrounding conditions recited by the witnesses. The jury had the right to consider all of the facts offered in proof, as well as the natural and reasonable inferences therefrom. The stated facts and the natural and reasonable inferences therefrom were questions for the jury. Being jury questions, it was entirely proper for the court to instruct the jury with reference to the law applicable.

The giving of instruction "E," therefore, was not an error. It follows that it was error for the trial court to set aside the verdict of the jury because of the giving of that instruction.

What we have said makes it unnecessary to discuss any of the further assignments of error with reference to the second trial in the lower court. The evidence upon that trial was substantially the same, with the exception that Tyler testified his headlights were burning, although he was unable to state the capacity of the headlights. The trial court, thereupon, gave an instruction substantially in the same language as original instruction "E" with the exception that it omitted any reference to the failure to burn any headlights.

We, therefore, conclude that the first trial was a fair trial according to the law and the evidence. A fair and impartial jury there resolved all questions in favor of the

defendant. The full purpose of the law has been accomplished when the parties have had one full and fair trial.

The trial court erred in setting aside the first verdict. It will be reinstated, and judgment will be here entered for the defendant. All proceedings subject to the first verdict are annulled.

*Reversed.*